AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

FILED
IN CLERKS OFFICE
2022 MAR -7 PM 2:15
U.S. DISTRICT COURT
DISTRICT OF MASS.

# UNITED STATES DISTRICT COURT

for the

Duane C Gomez
*Petitioner*

v.

Superintendant - Antone Moniz, Sheriff - Joseph D. Mcdonald Jr.
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

Case No. ____________
*(Supplied by Clerk of Court)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: DUANE Curtis GOMEZ
   (b) Other names you have used:
2. Place of confinement:
   (a) Name of institution: Plymouth County Correctional Facility
   (b) Address: 26 Long Pond Rd. Plymouth MA 02360
   (c) Your identification number: Plymouth #12428 Federal #96304-038
3. Are you currently being held on orders by:
   ☑ Federal authorities ☐ State authorities ☐ Other - explain:
4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   (a) Name and location of court that sentenced you: U.S. District Court for the District of Mass. John Joseph Moakley Court house
   (b) Docket number of criminal case: 14-CR-10297-IT
   (c) Date of sentencing: Feb 9th 2022
   ☐ Being held on an immigration charge
   ☑ Other *(explain)*: Probation Violation

### Decision or Action You Are Challenging

5. What are you challenging in this petition:
   ☑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❏ Pretrial detention

❏ Immigration detention

❏ Detainer

❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
maximum or improperly calculated under the sentencing guidelines)

❏ Disciplinary proceedings

❏ Other *(explain):* First Step Act - Good time credits for
Programming RDAP - (Dec 21 2018 thru Nov 13 2019) 150-160
days of credit

6.  Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court: Bureau of Prisons - 320 First St
N.W. Washington DC. 20534

(b)  Docket number, case number, or opinion number:

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
calculation of credits

(d)  Date of the decision or action: None as of yet

## Your Earlier Challenges of the Decision or Action

7.  **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☑ Yes          ❏ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: Wrote to Region & Headqauters
as well as BOP

(2)  Date of filing: on or about Feb 15 2022

(3)  Docket number, case number, or opinion number:

(4)  Result: None as of yet

(5)  Date of result:

(6)  Issues raised: No BOP Contact or Staff for these issues
at Plymouth County. As you can see I have
asked Superintendant / ADS / and Programs Director and
Legal for calls and or contact with BOP to no avail.
No return of requests from Superintendant but on and
about Jan 15 2022, Jan 25 2022, Feb 5 2022, Feb 17, 2022
I have raised these issues to anyone and everyone. here

(b)  If you answered "No," explain why you did not appeal:

8.  **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

❏ Yes          ☑ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

    _____

    _____

    _____

(b) If you answered "No," explain why you did not file a second appeal: _____

_____

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes      ☑ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

    _____

    _____

    _____

(b) If you answered "No," explain why you did not file a third appeal: _____

_____

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes      ☑ No

If "Yes," answer the following:

(a)     Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes      ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: I am seeking the good time credits as the first step act of 2018 and Dept of Justice have put into effect, and with me being in Marshal custody, I am not being processed as every other Federal inmate. I have a 240 day sentence if I get my credits I would have a date of March 14 2022

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☑ No

If "Yes," provide:

(a) Date you were taken into immigration custody: _____

(b) Date of the removal or reinstatement order: _____

(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing:

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d)  Did you appeal the decision to the United States Court of Appeals?

☐ Yes              ☑ No

If "Yes," provide:

(1) Name of court:

(2) Date of filing:

(3) Case number:

(4) Result:

(5) Date of result:

(6) Issues raised:

12.  **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes              ☐ No

If "Yes," provide:

(a) Kind of petition, motion, or application: I wrote to my Sentencing Judge

(b) Name of the authority, agency, or court: Indira Talwani
1st Circuit Boston Federal Courthouse John Joseph Moakley

(c) Date of filing: On or about Feb 17 2022

(d) Docket number, case number, or opinion number: 14-CR-10297

(e) Result: None as of yet

(f) Date of result:

(g) Issues raised: Good time and no counsel or advocate for this matter

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** First Step ACT (Time Credits)
As Attorney General Merrick Garland ordered in Jan 13 2022
Memo attached [☒] C-1

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
I was housed in RDAP program from Dec 21 2018 to March 16 2019 transfered to RRC Coolidge which I continued to program at Hope House TDAP follow up of RDAP ② twice a week until Nov 13 2019 return to custody. Which is allowed and accepted by DOJ & BOP in the Final Rule in Federal Register

(b) Did you present Ground One in all appeals that were available to you?     see attached [☒] C2
☐ Yes          ☐ No

**GROUND TWO:** Being Housed in A Non-BOP facility

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
All rights and policys and Procedures are not afforded to Federal inmates here and libertys are not met. and no Remedy Process availible

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☐ No

**GROUND THREE:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes                     ☐ No

14.     If there are any grounds that you did not present in all appeals that were available to you, explain why you did
        not: _____

_____

_____

_____

## Request for Relief

15.  State exactly what you want the court to do:   To release me, the credits at
150 DAYS put my (EOS) End of sentence at March 14 2022/ Terminate
Probation/Or order BOP to calculate my time. Terminate Probation
as I will be well past this date and already
②two, 8 month violations served

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

3/4/22

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 3/4/22

_Signature of Petitioner_

_Signature of Attorney or other authorized person, if any_

1A

14-CR-10297

RE: FSA Time Credits 28 CFR part 523 and 541 [BOP-1176P] RIN 1120-AB76 Final Rule.

This rule codifies the Bureau of Prisons procedures regarding the earning of and application of time credits. For Evidence Based Recidivism Reduction (EBRR) Programs.

With regard to participation in programming completed after the date of the First Step Act (FSA) enactment, but before completion of all inmate risk and needs assessments on January 15 2020. Some Courts have held that eligible inmates should be awarded FSA credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in New Jersey and Oregon have directed the Bureau to award credits under the FSA for successful participation of programs and activities occurring before January 15 2020, but on a after December 21 2018 The FSA date of enactment.

1B

See attached. Cazares vs Hendrix 20-cv-2019
District of Oregon Nov 9 2021
Goodman vs Ortiz 2020 WL 5015613,
District of New Jersey August 25 2020
Hare vs Ortiz 2021 WL 391280
District of New Jersey (limiting award of
Time credits to those earned for programs
completed on or after the date of enactment
of FSA. Dec 21 2018)
   Gallo vs Ortiz   Civ No. 20-16416
   District of New Jersey. Filed Feb 16 2021
(District Court required the bureau to
 Calculate Time Credits based on 2018 Date)
Awarding Time Credits as of the date
of enactment may also be more consistent
with the FSA's goals of reducing
recidivism through participation.
From a fairness perspective the bureau
has to acknowledge my credit and
participation in RDAP because I was
housed in RDAP follow up in Fort Dix, and
then when transfered to Coolidge house
continued with TDAP from March 2019 through
November 13 2019 of counsling and meetings
every week.

Participation
Dec 21 2018

Nov 13 2019



In addition it was not until Jan 15 2020
that the needs assessment was created
or comprehensive uniform tracking codes
existed.

Due to these administrative difficulties
for inmates participating in programming
after the date of enactment (Dec 21 2018)
But before the date of risk and needs
assessments (Jan 14 2020) it is not feasible
for the bureau to connect individual
inmates participation in programming to
individualized risk and needs assessments,
since the risk and needs assessment tool
did not exist until well after the FSA
enactment.

Eligible inmates will be afforded a presumption
of participation for the period between
Dec 21 2018 and Jan 14 2020 and be awarded
Time Credits accordingly.

Respectfully

Duane Gomez
96304-038

1D

As you can see I have reached out to every possible person in thier offical capacity. regarding these credits.

Here are copies from requests (Just a couple) I have over 30 such requests But this Facility has no contact with the Bureau in any way.

Also my appointed Atty Thomas loveno has not answered any calls from myself or my family since sentencing February 9 2022 I even had the in house legal aid call as you can see. He told me he would assist in this issue before my sentencing and here I am after exhausting every possible remedy.

I am also sending a copy of all this to the Dept of Justice.

Because I am sentenced and housed in a county jail my rights are being violated as a federal inmate.

1E

I have sent letters and called all of these inviduals.

Notheast Regional Office
R.L. Rhodes Residential Re-Entry Administrator
Nicole English Regional Director
Rachel Rollings Atty General
Sarah Qureshi DOS Rules Administrator Wash DC
Micheal Carvajal Director BOP Wash DC.
John Gibbons US Marshal Boston
Merrick B Garland Atty General Wash DC

Exhaustion of Administrative Remedies
I am currently housed at Plymouth
County Correctional Facility.
And have wrote requests to Superintendant
on and about Jan 15 2022, Jan 25,2022
Feb 5 2022, Feb 17 2022, Also the Assistant
Superintendant Malavalo, ADS Morrison
Programs Director Robin Mcglory.
most of these requests where never
sent back or shown as recieved.
Also wrote to Rachel Rollings Atty
General (see attached) response. 2B
Regional director Nicole English
Residential Re-entry Administrator R.L. Rhodes
Rule Administrator DOJ Sarah Qureshi DC
Bureau of Prisons Director Micheal Carvajal

Being here I have no access to
the F.B.O.P and there is no liaison
for sentenced Federal inmates
here. (see just some of
my requests)

This is a request for permission to proceed in forma pauperis for the ⑤ five dollar filling fee. regarding this §2241 writ of habeas corpus Due to indigents.

Respectfully

14-CR-10297-1T

Duane C Gomey
96304-038





**U.S. Department of Justice**

***Rachael Rollins***
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 2, 2022

Duane Gomez
26 Long Pond Road
Plymouth, MA 02360
Re: Your Letter from 01/26/2022

Dear Mr. Gomez:

Our office is in receipt of your correspondence dated 01/26/2022 asking for assistance and attention to not only yourself but for hundreds of current federal inmates and their rights as inmates.

The U.S. Attorney's Office is not an investigative agency and is not in a position to investigate your allegations. This office does not represent individuals in matters or lawsuits you may wish to bring against another person, company or government agency.

This office prosecutes federal criminal offenses and represents the United States of America in certain civil matters. The U.S. Attorney represents the United States of America and its agencies, such as the U.S. Department of Interior or the U.S. Department of Agriculture. This office also represents the United States of America in criminal matters filed against individual or corporate defendants.

Almost all complaints or allegations of crime made to our office get referred to another agency for investigation. Your complaint will be more efficiently processed if you go directly to the appropriate agency. For a listing of local addresses of federal agencies, visit http://www.justice.gov/usao/ma/reportacrime/index.html.

The U.S. Attorney's Office cannot give legal help or advice to individuals. However, a private attorney or legal aid office may be able to assist you. The Boston or Massachusetts Bar Association may be able to refer you to an attorney that specializes in these types of matters. You can reach the Boston Bar Association's attorney referral service at (617) 742-0625 and the Massachusetts Bar Association's attorney referral service at (617) 654-0400. The Massachusetts Bar Association also has a website for more information on attorney services at http://www.masslawhelp.com.

Sincerely, **G.S.** Duty Paralegal

2C

## Plymouth County Correctional Facility

### Inmate Request / La Demanda Del Preso / Pedido de Ocupante

Date: Fecha: Data: _1-22-22_

To: A: Para: _Program director Robin Maglou_

From: De: _Duane Homes_

ID #: _12428_

Unit / La Unidad / Unidade _H3_   Room # / El Cuarto# / Quarto# _311_

**List request (s)**
La Demanda de la lista (s) / Pedido de lista (s) / (Escrito en ingles) / (Escrito em ingles)

In regards to any and all
re entry packets or programs that
can be used for Federal Time Credit
of the 2018 First-Step Act

Inmate's Signature:
La Firma de preso:
A Assinatura de ocupante: _Duane Homes_

Received by: _____

### Staff Response / Oficial de estado mayor Response / Proveja de pessoal Resposta

☐ Approved / Aceptado / Aprovado        ☐ Denied / Negaron / Negado

**Comments or Reason for Denial**
Comentarios o Rezona para el Rechazo / Comentários ou Argumenta para Negação

Duane, because we are a holding
facility I have attached the address
for the Official Bureau of Prisons. They
can hopefully provide you with more
information of programs that fall under
or qualify under the First Step Act.

Staff Name: _RMtgg_        Date: _1-24-22_

Original : Inmate Folder   Copy to Inmate

2C

2d

**Plymouth County Correctional Facility**

**Inmate Request / La Demanda Del Preso / Pedido de Ocupante**

Date: Fecha: Data: 2/22/22

To: A: Para: Legal Dept

From: De: Duane Homes

RECEIVED
FEB 23 2022
BY:

ID #: 12428

Unit / La Unidad / Unidade: H3    Room # / El Cuarto# / Quarto# 29

**List request (s)**
La Demanda de la lista (s) / Pedido de lista (s) / (Escrito en ingles) / (Escrito em ingles)

- In regards to a advocate for
me and my legal standings
I have no attorney and the
Public defenders office will not
take my calls due to my
ineffective assistance against my
sentencing attorney. Thank you

Inmate's Signature:
La Firma de preso:
A Assinatura de ocupante: Duane Homes

Received by: Cin

**Staff Response / Oficial de estado mayor Response / Proveja de pessoal Resposta**

☐ Approved / Aceptado / Aprovado      ☐ Denied / Negaron / Negado

**Comments or Reason for Denial**
Comentarios o Rezona para el Rechazo / Comentários ou Argumenta para Negação

FEO
atty. Thomas Ioveno
(607) 864-3300

2/23 - called atty + left message
2/24 - called + left message

Staff Name:
Date:
No return call. M. Comg. Sorry.

Original : Inmate Folder / Copy to Inmate

2d

2E

## Plymouth County Correctional Facility

### Inmate Request / La Demanda Del Preso / Pedido de Ocupante

Date: Fecha: Data: 2/23/

To: A: Para: Bob Hil

From: De: Duane

RECEIVED
FEB 24 2022
By

ID #: 12428

Unit / La Unidad / Unidade   H3   Room # / El Cuarto# / Quarto#   329

#### List request (s)
**La Demanda de la lista (s) / Pedido de lista (s) / (Escrito en ingles) / (Escrito em ingles)**

Can you Email the Rules coord
Administrator for the DOS
Sarah N Qureshi
Email - Squreshi@BOP.Gov
Regarding Federal Time Credits
For me Duane Homes 96304-c38

Inmate's Signature:
La Firma de preso:
A Assinatura de ocupante: Duane Homes

Received by:

### Staff Response / Oficial de estado mayor Response / Proveja de pessoal Resposta

☐ Approved / Aceptado / Aprovado        ☐ Denied / Negaron / Negado

**Comments or Reason for Denial**
Comentarios o Rezona para el Rechazo / Comentários ou Argumenta para Negação

We do not fax or email
this type of info to outside
agencies. She works for Bureau
of Prisons so she should be aware.
You can write to her.

Staff Name: C. Lynn        Date: 2/29/

Original : Inmate Folder    Copy to Inmate

2E

2F

**Ply**

**Inmate Requ** *Whateva letters you*

Date: Fecha: Data *send send to inmate*

To: A: Para: *legal find, for*

From: De: *copies,*

ID #:

Unit / La Unidad / Uni (ingles)

La Demanda de la l

RDAP

address

*Philly*

FEB 1 1 2022

**Inmate's Signature:**
**La Firma de preso:**
**A Assinatura de ocupante:** *mario firme*

**Received by:**

**Staff Response / Oficial de estado mayor Response / Proveja de pessoal Resposta**

☐ Approved / Aceptado / Aprovado          ☐ Denied / Negaron / Negado

**Comments or Reason for Denial**
Comentarios o Rezona para el Rechazo / Comentários ou Argumenta para Negação

*M Torrez*
*Much of what I'm sending you*
*is info I think you already know.*
*The address is a well kept secret*
*but I found the N.E. Regional office*

**Staff Name:** _____  **Date:** _____
Original : Inmate Folder    Copy to Inmate

*address, along with 2 names "English" &*
*someone you can personal Clallum" "Rhodes"*

2F



An official website of the United States government
Here's how you know



THE UNITED STATES
DEPARTMENT *of* JUSTICE
TICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE

Thursday, January 13, 2022

## Justice Department Announces New Rule Implementing Federal Time Credits Program Established by the First Step Act

Today, the Department of Justice announced that a new rule has been submitted to the Federal Register implementing the Time Credits program required by the First Step Act for persons incarcerated in federal facilities who committed nonviolent offenses. As part of the implementation process, the Federal Bureau of Prisons (BOP) has begun transferring eligible inmates out of BOP facilities and into either a supervised release program or into Residential Reentry Centers (RRCs) or home confinement (HC).

"The First Step Act, a critical piece of bipartisan legislation, promised a path to an early return home for eligible incarcerated people who invest their time and energy in programs that reduce recidivism," said Attorney General Merrick B. Garland. "Today, the Department of Justice is doing its part to honor this promise, and is pleased to implement this important program."

The First Step Act of 2018 provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. The earned credits can be applied toward earlier placement in pre-release custody, such as RRCs and HC. In addition, at the BOP Director's discretion, up to 12 months of credit can be applied toward Supervised Release. Inmates are eligible to earn Time Credits retroactively back to Dec. 21, 2018, the date the First Step Act was enacted, subject to BOP's determination of eligibility.

Implementation will occur on a rolling basis, beginning with immediate releases for inmates whose Time Credits earned exceed their days remaining to serve, are less than 12 months from release, and have a Supervised Release term. Some of these transfers have already begun, and many more will take place in the weeks and months ahead as BOP calculates and applies time credits for eligible incarcerated individuals.

The final rule will be published by the Federal Register in the coming weeks and will take immediate effect. The rule, as it was submitted to the Federal Register, can be viewed here: https://www.bop.gov/inmates/fsa/docs/bop_fsa_rule.pdf

Please note: This is the text of the First Step Act Time Credits final rule as signed by the Director of the Federal Bureau of Prisons, but the official version of the final rule will be as it is published in the Federal Register.

---

**Component(s):**
Federal Bureau of Prisons (BOP)
Office of the Attorney General

**Press Release Number:**
22-30

*Updated January 13, 2022*

**Please note:** This is the text of the First Step Act Time Credits final rule as signed by the Director of the Federal Bureau of Prisons, but the official version of the final rule will be as it is published in the Federal Register.

C-2

23e[4410-05OP]

# DEPARTMENT OF JUSTICE

**Bureau of Prisons**

**28 CFR part 523 and part 541**

[BOP-1176P]

**RIN 1120-AB76**

**FSA Time Credits**

**AGENCY:** Bureau of Prisons, Justice.

**ACTION:** Final Rule.

**SUMMARY:** This rule codifies the Bureau of Prisons' (Bureau) procedures regarding the earning and application of time credits as authorized by the First Step Act of 2018 (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits." The FSA provides that eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

**DATES:** This rule is effective on [INSERT DATE OF PUBLICATION IN THE *FEDERAL REGISTER*].

**FOR FURTHER INFORMATION CONTACT**: Sarah Oureshi, Office of General Counsel, Bureau of Prisons, phone (202) 353-8248.

**SUPPLEMENTARY INFORMATION**:

This rule codifies the Bureau of Prisons' (Bureau) procedures regarding First Step Act (FSA) Time Credits, as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (P.L. 115-391, December 21, 2018, 132 Stat 5194) (FSA). The FSA provides that an eligible inmate in Bureau custody who successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will earn FSA Time Credits, to be applied toward prerelease custody (i.e., transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release (i.e., early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g).

The proposed rule on this subject was published on November 25, 2020 (85 FR 75268). The public comment period ended on January 25, 2021. The Bureau received over two hundred and fifty responses to the publication of the proposed rule, but cannot generate a definite number of comments, as a significant portion of responses were from inmates in Bureau facilities and their family members requesting that FSA Time Credits be applied to the terms of imprisonment of particular inmates, rather than specific comments or questions regarding the proposed regulations as published.

Staff at Bureau facilities have been instructed to address specific questions regarding application of FSA Time Credits to particular inmates with those individual inmates, and we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities. A list of Bureau of Prisons Regional Offices can be found on the Bureau website: https://www.bop.gov/about/facilities/offices.jsp?o=4.

The Bureau also received a large number of comments on the proposed regulations which repeated certain common themes and issues. We have therefore consolidated the issues raised into representative excerpts from selected commenters, and address these issues below.

Additionally, on October 18, 2021, the Bureau published a Notice reopening the comment period of the proposed rulemaking until November 17, 2021, to solicit public comment on the limited issue of whether D.C. Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4), as added by the FSA. (86 FR 57612). We received thirty submissions during the reopened comment period with regard to that issue, which we discuss further below.

**COMMENT: The Bureau's definition of a "day" as one eight-hour-period of a successfully completed EBRR Program or PA is incorrect, unworkable, and/or contrary to congressional intent.**

The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(ii). The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes."

More than 150 commenters raised concerns with the Bureau's definition. For example, Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) commented as follows:

The proposed rule's definition of a "day" of program participation does not adequately

reward engagement with [EBBR programs] and PAs consistent with the First Step Act. . .

. Because BOP programs do not run for eight hours per day, the proposed rule would

require individuals to attend an EBRR or PA for several calendar days before they earned

a full "day" of time credit. . .  It was not our intent as drafters of the legislation that BOP

define a "day" in this way.  Nor did Congress ever consider it. . . .  The proposed rule's

narrow definition of a "day" does not adequately incentivize program participation and

reduce recidivism as intended by the First Step Act.

Congressman Hakeem Jeffries (D-NY) echoed the Senators' sentiments, stating:

[D]efining a day as eight hours of participation does not appear to be a good faith attempt

to honor congressional intent.  A day of successful participation is clearly a day on which

a prisoner has successfully participated in a program or productive activity.  BOP[']s

definition of [a] day would dramatically reduce the amount of time credits an individual

can earn.


RESPONSE:  After carefully considering the comments received, the Bureau agrees that a

change is warranted.  The proposed definition of a day of successful participation was inconsistent with

the goals of the FSA and would have been logistically burdensome to calculate and administer.  The

Bureau is thus adopting a simpler FSA Time Credits program award model that will more fully

encourage and reward participation in evidence-based recidivism reduction programs and productive

activities.

In enacting the FSA, Congress made clear that Time Credits should be broadly applicable to a

wide range of inmates for a broad range of activities to maximize their opportunities to reduce

recidivism. The proposed definition, however, would have meant that inmates could successfully do everything asked of them as part of their recommended programming for multiple days (e.g., two hours each day for four days), but be credited for only one day of successful participation.

In addition, the proposed definition would have required Bureau staff to not only track inmate participation in recommended programming, but also break down participation time into individual hours of work, and then aggregate time spent completing certain programming with other time spent completing other programming. This approach would have varied the earning of Time Credits by program factors such as intensity, length, and duration that could have been confusing to inmates, burdensome for staff to administer, and inconsistent with the general goal of awarding Time Credits in a consistent manner to inmates who are participating in the full range of programming recommended to them based on the results of their risk and needs assessments.

The final rule adopts a more straightforward and more administratively manageable approach that is consistent with the FSA's goal of promoting successful participation in EBRR Programs and PAs. For every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period.

An eligible inmate must successfully participate in programs and activities that the Bureau recommends based on an individualized risk and needs assessment to earn Time Credits. An inmate will not be considered to be successfully participating if that inmate refuses to participate in or otherwise violates conditions, rules, or requirements of EBRR programs or PAs recommended based on the inmate's risk and needs assessment. However, temporary interruptions in participation that are

unrelated to an inmate's refusal to participate or other violation of programming requirements, in that

are authorized by the Bureau, such when a recommended program or activity is unavailable or at full

enrollment, will not affect the inmate's ability to earn Time Credits.

If an eligible inmate refuses to participate in the recommended program or activity, engages in

misconduct that results in removal from the program or activity through placement in restrictive

housing, or disrupts or fails to follow the conditions, parameters, or rules of the program or activity,

accrual of Time Credits is paused until the inmate complies with programming or completes the

disciplinary sanction. This methodology is intended to guide inmates back to the appropriate pro-social

goals of programming and act as a deterrent for future misconduct, giving inmates a direct incentive to

maintain clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541).

By clarifying the method for awarding Time Credits in this manner to ensure it furthers

Congressional intent of the statute, the Bureau hopes to increase the amount of FSA Time Credits that

may be awarded to eligible inmates.

**COMMENT: FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule.**

More than 150 commenters raised this issue, including Senator Sheldon Whitehouse (D-RI) and

Senator John Cornyn (R-TX), who wrote:

The Act provides that "[a] prisoner may not earn time credits under this paragraph for an

evidence-based recidivism reduction program that the prisoner successfully completed

. . . prior to the date of enactment of this subchapter." 18 U.S.C. 3632(d)(4)(B). . . . The

proposed rule, however, states that an individual may only earn time credits for programs

"successfully completed on or after January 15, 2020"—more than a year after the date of

enactment.  Nor does the proposed rule explain why individuals are not eligible to earn

time credits for programs completed between December 21, 2018 and January 15, 2020.

Congressman Hakeem Jeffries (D-NY) also commented on this issue, opining that the

regulation's proposed start date for earning time credits of January 15, 2020, "serves no clear purpose

and is inconsistent with the text of the First Step Act, which states that credit may not be earned for

programs completed prior to the date of enactment of this subchapter, which was December 21, 2018."

RESPONSE:  As the commenters correctly note, the FSA explicitly states that Time Credits

may not be earned for participation in programming prior to the date of the FSA's enactment.  The

statute is silent, however, as to the specific date on which inmates should begin to earn Time Credits.

Instead, the statute expressly contemplates a phased-in approach and sets specific timelines and

benchmarks for implementation.[1]  This phased-in approach is appropriate and warranted, given that the

FSA has been the most impactful congressional action taken concerning the Bureau of Prisons in recent

years, requiring major changes to existing systems and processes, the development of new systems, and

changes that apply to approximately 130,000 current inmates.

Under this phased-in approach, the Attorney General was required to develop and release the risk

and needs assessment system within 210 days from the date the FSA was signed into law, December 21,

2018.  The new risk and needs assessment tool, called the Prisoner Assessment Tool Targeting

Estimated Risk and Needs (PATTERN), was subsequently released on July 19, 2019, in accordance with

---

[1] See 18 U.S.C. § 3621(h)(1)(C), referring to the "risk and needs assessment tools necessary to effectively implement the System over time," and § 3621(h)(2)(A), requiring that EBRR Programs and PAs be provided "before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner. . . ."  The Bureau completed risk and needs assessments for every inmate in Bureau custody on January 15, 2020, and, therefore, as indicated by the FSA, had until January 15, 2022, to ensure that EBRR Programs and PAs are provided to eligible inmates in Bureau custody.  The Bureau was already providing those programs and activities to eligible inmates well in advance of that date.

the FSA. Additional modifications of PATTERN occurred after feedback was received from various stakeholders and the FSA-established Independent Review Committee.

The FSA required that as part of the implementation period, within 180 days of the risk and needs assessment system's release date, the Bureau would conduct initial risk and needs assessments for the inmate population and begin expanding the EBRR Programs and PAs necessary to effectively implement the system.[2] The Bureau assigned an initial PATTERN risk level to each inmate by the statutory deadline of January 15, 2020. And, notably, the Bureau implemented the FSA's directive at 18 U.S.C. 3621(h)(2)(A), to assign inmates to EBRR Programs or PAs by January 15, 2022 (two years after the date by which the agency completed risk and needs assessments for all inmates) well before that date.

Because the FSA contemplates a phase-in period during which the risk and needs assessment system could be developed, and because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, the Bureau exercised its discretion and adopted the position in the proposed rule that it would be reasonable for the Bureau to begin allowing inmates eligible under the FSA to earn FSA Time Credits *after* the risk and needs assessment and relevant programming were established, i.e., on January 15, 2020, the date on which initial evaluations under the new risk and needs assessment system were completed. However, in light of the comments submitted, the Bureau acknowledges that because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, yet explicitly prohibits the earning of Time Credits for participation prior to the date of enactment, the statute could also be interpreted to allow for eligible inmates to earn Time Credits as of December 21, 2018, the date of enactment of the FSA.

---

[2] See 18 U.S.C. § 3621(h)(1).

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau.  Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment.  See, e.g., Cazares v. Hendrix, 20-cv-2019 (D. Or. Nov. 9, 2021);  Goodman v. Ortiz, 2020 WL 5015613, at *6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); Hare v. Ortiz, 2021 WL 391280, at *7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); Gallo v. Ortiz, Civ. No. 20-16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3]  Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect,

---

[3] Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018.  See, e.g., Cohen v. United States, No. 20-cv-10833, 2021 WL 1549917, at *6 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period."); Kennedy-Robey v. Warden, FCI Pekin, No. 20-cv-1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so."); Llewlyn v. Johns, No. 5:20-cv-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021);  Herring v. Joseph, No. 4:20-CV-249, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020); Holt v. Warden, 4:20-CV-04064-RAL, (D.S.D. May. 13, 2021; Fleming v. Joseph, No. 3:20CV5.990-LC-HTC, 2021 WL 1669361 (N.D. Fla. Apr. 7, 2021) (report and recommendation).  See also  Bowling v. Hudgins, 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); Allen v. Hendrix, 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

between December 21, 2018 (the date of the enactment of the FSA) and January 15, 2020 (the date risk

and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

      While the Bureau continues to consider the FSA amenable to the interpretation reflected in the

proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and

fairness considerations, it exercises its discretion to adopt the reading urged by the majority of

commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step

Act to receive retroactive Time Credits for programming and activities they participated in starting on

December 21, 2018, the date of the FSA's enactment.   In determining how to award FSA Time Credits

during the period before all individualized risk and needs assessments had been completed, the Bureau

faces administrative challenges.  Consistent with the phased-in approach contemplated by the FSA, the

Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until

January 15, 2020, because comprehensive uniform tracking codes did not exist.  In addition, it was not

until that date that the Bureau had completed individualized risk and needs assessments for every

inmate—and thus had a basis to conclude that there was an evidence-based reason to assign a particular

program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's

risk of recidivism.  Thus, in many instances, inmates were participating in programs for reasons other

than addressing a criminogenic need.

      Due to these administrative difficulties, for inmates participating in programming after the date

of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments

(December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate

participation in programming to individualized risk and needs assessments, since the risk and needs

assessment tool did not exist until well after the date of the FSA's enactment.  Instead, for inmate

participation in programming during this period of time, the Bureau will exercise its discretion to award

FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018 and January 14, 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another federal or non-federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's "home" facility within the Bureau), or for refusing mandatory programming, as further explained below.

**COMMENT:  There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.**

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

RESPONSE: The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019.  See The First Step Act of 2018: Risk and Needs Assessment, U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (July 2019).  The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening sessions.  On November 19, 2019, the Attorney General met with the Independent

Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632.

The Attorney General then announced enhancements to PATTERN in a document entitled The First Step Act of 2018: Risk and Needs Assessment System - UPDATE, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized process for inputting scores into the risk and needs system, and the Bureau will continue to ensure that necessary precautions are taken to ensure consistent, objective application for all inmates in accordance with the published schema.

The *2021 Annual Review and Revalidation of the First Step Act Risk Assessment Tool* report confirmed the predictive and dynamic validity of PATTERN, but expressed the concern that differences in race and ethnicity might affect predictions of risk for recidivism. The Justice Department takes seriously its responsibility under the First Step Act to annually "review, validate, and release publicly on the Department of Justice website the risk and needs assessment system," and ". . .to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups . . ." 18 U.S.C. 3631(b)(4)(E). The Department will continue to meet this mandate, to rigorously evaluate any risk assessment tool, including through the use of outside experts, and to take all steps possible to address and mitigate against racial bias or other disparities.

As part of that compliance, the Department will publish annually (1) for each disqualifying offense, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (2) for each disqualifying prior federal conviction, data on how many individuals from each

racial and/or ethnic group were ineligible to earn Time Credits; (3) for all other disqualifying prior convictions, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (4) data on how many individuals from each racial and/or ethnic group were eligible to earn Time Credits; and (5) how many individuals from each racial and/or ethnic received risk and needs assessment score classifications of "high," "medium," "low," and "minimum" based on their most recent assessment.

**COMMENT:  The Bureau does not have the resources to implement the FSA Time Credits program appropriately.**

Several commenters were concerned about the Bureau's ability to implement the FSA Time Credits program.  One commenter, for example, stated that "the average course that is offered by BOP is not listed on the list for reentry courses, some of which are college/correspondence courses that inmates have to pay for out of pocket.  As for the courses that are listed, they are not even offered at this time because inmates are the teachers of them, and COVID does not allow inmates to teach them at this time.  Many inmates are returning home now, not having had any reentry courses -- not to their own fault."  Other commenters mentioned long waitlists and other scarcity of resource issues.

RESPONSE:  The Bureau recognizes the significant impact that the FSA will have on inmate programming, and notes that additional appropriated funding has been directed toward FSA implementation.  These additional resources will be used to add to existing programs and meet the FSA's direction that the Bureau encourage and increase inmate programming participation.

Before the enactment of the FSA, the Bureau already offered a wide variety of programs and activities designed to prepare inmates for release, educate them, and provide them with substance abuse disorder and mental health treatment.  The Bureau has always endeavored to focus on increasing the breadth and depth of its programming for inmates and build greater capacity for inmate participation in

~~programming, and the FSA provides further statutory support for that mission. To that end, the Bureau~~

has asked, and will continue to ask, Congress to authorize funding and staffing for those purposes, and
will endeavor to fill staff positions as necessary to increase and enhance inmate programming.

In The First Step Act of 2018: Risk and Needs Assessment System - UPDATE, U.S. DEP'T OF
JUSTICE: OFFICE OF THE ATTORNEY GENERAL, https://www.bop.gov/inmates/fsa/docs/the-first-
step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (January 2020) (2020 Update), the
Department indicated that it had received feedback expressing concerns about the Bureau's
programming capacity. Id. at 18. The issue raised by this feedback to the Department is substantially
similar to concerns raised by the commenters on the Bureau's proposed rule.

In response to the feedback discussed in this 2020 Update, the Department described the waitlist
process for inmate programming, indicating that that process is meant to ensure that inmates are
"enrolled in needed courses at the appropriate times in their incarceration," and that "case management
and programming staff monitor these lists based on inmate need and release date/plans, to ensure
relevant programs are completed in appropriate timeframes." Id. The Department also described the
ongoing expansion of Federal Prison Industries and the Resolve Program (providing trauma treatment).
However, the Department also noted:

> As part of the FSA implementation, the BOP is assigning codes to approved evidence-
> based recidivism reduction programs and productive activities to enable tracking and
> monitoring of their capacity and use. BOP will also begin assigning inmates to specific
> programs to address identified needs, which will allow it to further examine inmate
> interest and program capacity. Based upon these changes, BOP can expand or contract
> capacity consistent with the inmate needs and interests.

Id.  The Department also noted in the 2020 Update that the Bureau had "already begun expanding programs and hiring staff to deliver" further necessary programming, and that although the FSA, issued in 2018, had "not come with appropriated funds in FY 2019 . . . BOP had taken the initiative to adjust funding within its budget to cover a variety of targeted FSA activities."  Further, for FY 2020, approximately $116 million was authorized to allow the Bureau to expand evidence-based reentry programs, capacity for prerelease custody, medication-assisted treatment (MAT) for opioid use disorder nationwide, information technology services for inmates, and evaluation of programs and services.  Id. at 21-22.

Additionally, in the 2020 Update, the Department noted that to facilitate implementation of the FSA, the Bureau had increased staffing at female institutions and enhanced male and female trauma treatment and vocational training offerings.  The Bureau also implemented a variety of hiring strategies to address staffing shortfalls, and continues to do so.  Id. at 24.  Therefore, while the Bureau recognizes that resources have been strained, future funding allotments will enhance the Bureau's course offerings and serve to bolster the Bureau's resources, improving its ability to carry out the FSA Time Credits program across all Bureau facilities.

**COMMENT:  FSA Time Credits should be awarded for participation in UNICOR, online or correspondence college courses, religious services, more time for RDAP, and other programs and activities.**

Several commenters suggested that the list of EBRR Programs and PAs should be expanded to include participation in, or a greater amount of Time Credits allowable for participation in, UNICOR and prison jobs, online or correspondence courses (including college courses), religious services, the Residential Drug Abuse Treatment Program (RDAP), and a variety of other programs, courses, and

activities.

For instance, one commenter indicated that while the requirement to successfully complete a program before earning Time Credits "may make sense for educational classes, certificate-based programs, or fixed length productive activities, it should not apply to prison jobs that would require ongoing accumulation of Time Credits. A prison job is not a 'program to complete,' has no set duration, and its success is based on continued employment and supervisor evaluations."

Another commenter suggested that those "participating in the Residential Drug[] Abuse Program (RDAP), should receive (16) program hours per day, 2 eight-hour program days for 1 proposed day, . . . [because] RDAP participants 'live' in a therapeutic community."

Additionally, Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) commented as follows:

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs. . . . Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

RESPONSE:

The Bureau agrees with these commenters, and has structured its programs and work assignments to promote participation and flexibility. New funding allotments will enhance the Bureau's course offerings, largely by permitting it to increase capacity through hiring additional staff, and will

also serve to bolster the Bureau's resources, thereby improving its ability to carry out the FSA Time Credits program. The Bureau began to enhance programming immediately after the FSA's enactment, using then-current appropriations from FY 2019 not allotted specifically for FSA implementation, and continued to grow its programming offerings with budget allotments as authorized from FY 2020 appropriations.

In The Attorney General's First Step Act Section 3634 Annual Report, U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, https://www.bop.gov/inmates/fsa/docs/20201221_fsa_section_3634_report.pdf (December 2020) (2020 Annual Report), the Bureau established a review process to consider externally submitted programs for potential inclusion on the approved EBRR Program/PA list. Id. at 17. The Bureau currently engages in partnerships with external organizations to recruit community volunteers to assist with inmate reentry and educational programs. Consistent with the goal of supporting and expanding volunteer activities at all institutions, on June 25, 2019, the Bureau provided guidance to all Wardens about the importance and use of partnerships under the FSA. Specifically, the Assistant Directors for the Office of General Counsel and Reentry Services Divisions issued guidance on collaboration with outside organizations pursuant to the FSA. This memorandum provided information on the FSA's statutory requirements, the Bureau process for establishing partnerships, equitable treatment of similar organizations, and tracking of partnerships.

On September 19, 2019, voluntary partnerships were in place at all 122 Bureau institutions. During FY 2019, 5,939 individuals volunteered 110,489 hours at various institutions. During FY 2020 (as of September 10, 2020), 5,978 volunteers and contractors had provided 157,752 hours at various institutions. The increase in volunteer hours can, in part, be attributed to staff efforts to increase partnerships pre-COVID-19, and changes made to the Bureau volunteer tracking system. Id. at 37.

In 2020, the Bureau created unique identifier codes for every Bureau program. These codes allow Bureau to track inmates' program enrollment, participation, and completion. This information can then be compared to needs assessment information and used as a method for assessing capacity. Unfortunately, because of the global pandemic, the Bureau has not been able to program as it would under normal conditions.

The Bureau assesses 12 broad need areas plus dyslexia, and programs are matched to each of these needs. As normal operations resume, the Bureau will be able to accurately track whether inmates sign up for the programs that match their needs, and whether the programs are offered with enough capacity that inmates are able to complete them at the appropriate times during their sentences. While the Bureau's current list of over 70 EBRR Programs and PAs addresses most areas of need, some improvements have been made even during the pandemic. For example, the Bureau created better quality and more standardized materials that provide more consistent program delivery. Additionally, a more intensive program addressing criminal cognition is in development to account for this highly prevalent need in Bureau facilities. Id. at 19-20.

Also, several programs and activities mentioned by the commenters as items that should be included in the list of approved programs are, in fact, already on the list. The First Step Act Approved Programs Guide, available on the Bureau's website at (https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf) (Programs Guide), contains a program description, institution locations, needs addressed by each program offered, and the department responsible for program delivery (e.g., Education, Psychology).

The Programs Guide indicates that offered programs and activities "will vary based on the needs of the sentenced population" at a given location. This helps to explain, in part, why some programs and

activities may not be available at all facilities.  However, as the Bureau continues to expand its offerings, the Programs Guide continues to expand, and will be updated annually.

With regard to several programs and activities specifically mentioned by commenters:

**UNICOR:**  Employment in Federal Prison Industries (FPI, also known by its trade name, UNICOR) is included in the Programs Guide as an EBRR Program.

**RDAP:**  The Residential Drug Abuse Treatment Program (RDAP), is included in the Program Guide as an EBRR Program.

**Online or correspondence college courses:**  The Programs Guide includes Post-Secondary Education programming, and explains that "[c]ollege level classes are provided by credentialed instructors from the community who deliver coursework leading to the Associates or Bachelors degree," and that "[s]pecific prerequisites for each program are determined by the school providing the service." See Programs Guide at 23.  This program, delivered by Education staff or appropriately credentialed contractors, allows for online or correspondence college courses, as authorized and credentialed by the Bureau's Education staff.

**Religious services and programming:**  The Programs Guide describes several faith-based programs and activities currently available at all Bureau facilities, including the Threshold Program, a faith-based reentry program (id. at 32), and Embracing Interfaith Cooperation, a PA which fosters interfaith dialogue and understanding to counter religious discrimination and extremism (id. at 36).

Also, the Bureau's longstanding Life Connections Program (LCP), a residential, multi-faith-based reentry program open to inmates of all religious traditions and those with no faith affiliation, uses contract partners to provide religious services, while community volunteers serve as mentors to inmate participants.  This program is available at six Bureau facilities.  See 2020 Annual Report, supra, at 37-38.

As the Bureau's FSA implementation budget appropriations increase and necessary COVID-19

pandemic-related health and safety restrictions ease, the Bureau will continue its efforts to expand

EBRR programming and PA offerings available at Bureau facilities for eligible inmates. Furthermore, as

noted above, the Bureau has changed the proposed regulation to a more inclusive model, whereby FSA

Time Credits may be earned if an eligible inmate is successfully participating in EBRR Programs and

PAs recommended based upon his or her risk and needs assessment. Also, inmates will not be penalized

if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at

their facilities. As the Bureau continues to evaluate these and other types of programs and activities, the

list of EBRR Programs and PAs for which inmates may earn FSA Time Credits will likewise increase.


**COMMENT: FSA Time Credits should be earned for successful participation, not only for successful completion.**

Many commenters opined that FSA Time Credits should be awarded on an ongoing basis, during

*participation* in EBRR programming and PAs, instead of after successful *completion* of an EBRR

Program or PA. One commenter wrote that

> [b]y focusing only on completion, BOP diminishes the value of participation and weakens
>
> the incentive structure Congress enacted. Indeed, there are myriad situations where people
>
> would successfully participate in an approved program and—through no fault of their own—
>
> be prevented from, or delayed in, completing it. Transfers, program resource and staffing
>
> limitations, and facility movement restrictions all impact program completion, as do length of
>
> sentence, program availability, and waitlists. Individuals have no control over completion if,
>
> for example, their facility is locked down, or if programs are indefinitely suspended due to a
>
> pandemic. Congress created the earned time credit system to encourage personal

responsibility.  BOP's all-or-nothing rule that fails to acknowledge participation is
inconsistent with this intent.  BOP should revise the proposed rule to allow individuals who
successfully participate in programming to earn time credits.

RESPONSE:  The Bureau agrees with these comments.  As indicated previously, the Bureau is
altering and expanding its method for awarding Time Credits.

The concern of the commenters regarding participation in programming echoes the Bureau's
longstanding policy of encouraging inmate reentry programming and productive activities throughout
each inmate's incarceration, which is consistent with the FSA's goal of attaining maximum recidivism
reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR
programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time
Credits to the maximum number of eligible inmates.

Toward that end, the Bureau has developed the simpler model which it now adopts for the FSA
Time Credits program.  Under this model, each eligible inmate earns Time Credits while participating in
recommended EBRR Programs and PAs.  Time Credits for successful participation are awarded at the
end of each thirty-day period.  By altering the scheme for awarding Time Credits in this manner, the
Bureau hopes to increase the amount of FSA Time Credits that may be awarded to the maximum
number of eligible inmates.  Inmates must participate in all programs and activities that the Bureau
recommends based on an individualized risk and needs assessment to be considered to have successfully
participated in recommended EBRR Programs and PAs for purposes of earning Time Credits.

It is important to note, however, that temporary interruptions in participation that are unrelated to
an inmate's refusal or other violation of programming requirements, such as the unavailability of a
recommended program or activity or its full enrollment, or interruptions authorized by the Bureau, will
not affect the inmate's ability to earn Time Credits.  An inmate's ability to earn FSA Time Credits will

be affected if the inmate refuses to participate in the recommended programming or productive activity,

engages in misconduct that results in removal from the program or activity through placement in

restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the activity. In

the event that the inmate is found to have committed any of these violations, accrual of Time Credits is

paused until the inmate complies with programming conditions, parameters, or rules, or completes the

disciplinary sanction.

For, example, the Bureau may permit an inmate to continue earning FSA Time Credit if

programming is briefly interrupted due to an instructor's illness, which results in the instructor canceling

class for the day. Another possible example might be a brief interruption caused by an inmate requiring

to be absent from programming for a day or two due to illness or medical treatment. In such

circumstances, the Bureau may review whether or not the illness or medical treatment is attributable to

factors over which the inmate may exercise control (possible drug overdose, injuries sustained while

fighting, etc.), whether the conduct is a disciplinary offense, or whether it is excusable behavior and

therefore may be authorized. The Bureau will strive to reach an equitable result when calculating time

in program participation and circumstances both beyond and within the inmate's control.

Accordingly, unless the inmate formally declines recommended programming addressing his or

her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will

be earning Time Credits and fully participating in recommended programming. The regulation indicates

that accrual of Time Credits may be suspended in certain situations when the inmate is unable to

participate in recommended programming, including, but not limited to, situations such as:

- Placement in a Special Housing Unit;

- Designation status outside the institution (e.g., for extended medical placement in a hospital or

  outside institution, court appearances, an escorted trip, a furlough, etc.);

- Temporary transfer to the custody of another federal or non-federal government agency (e.g., on state or federal writ, transfer to state custody for service of sentence, etc.);

- Placement in mental health/psychiatric holds;  or

- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Inmates who decline to participate in a recommended voluntary EBRR or PA (i.e., inmates that "opt out") will not be considered to be refusing a program assignment for the purposes of disciplinary prohibited act code violations, but will merely be excluded from benefits or privileges of FSA Time Credit Program participation.  For example, declining to take a recommended anger management course will prevent an inmate from earning FSA Time Credits, but will not in itself constitute a disciplinary prohibited act code violation.  Inmates that refuse a formal assignment, however, will also be held responsible for any attendant disciplinary prohibited act code violations, e.g. failing to report to institution work detail.[4]

COMMENT:  FSA Time Credits should be applied to an inmate's transfer to supervised release (to shorten a term of imprisonment).

Some commenters indicated that they were concerned that Time Credits would not, in fact, be applied to transfer to supervised release at all, but instead might only be applied to prerelease custody, noting that the proposed rule "does not address the procedures for determining whether an individual inmate will have FSA Time Credits applied toward prerelease custody, early transfer to supervised release, a combination of both, or neither; this proposed rule only addresses the procedures for earning, awarding, loss, and restoration of FSA Time Credits."

---

[6] See 28 CFR § 541.3, Table 1 – Prohibited Acts and Available Sanctions:  Moderate Severity Level Prohibited Acts, code 306:  "Refusing to work or to accept a program assignment."

RESPONSE: As stated, under the FSA, an eligible inmate who successfully participates in an EBRR Program or PA recommended by staff based on the inmate's risk and needs assessment may earn FSA Time Credits to apply toward prerelease custody or transfer to supervised release. Eligible inmates may earn 10 days of Time Credits (and, if maintaining a low or minimum risk status, an additional 5 days of Time Credits) for every 30-day period of successful participation in EBRR Programs or PAs.

However, under the FSA (18 U.S,C. 3624(g)), even if earned, Time Credits may not be applied to prerelease custody until:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

• The inmate has demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk during his or her term of imprisonment;

• The remainder of the inmate's imposed term of imprisonment has been computed under applicable law (e.g., Good Conduct Time Credit under 28 CFR part 523 has been applied, eligibility for early release consideration under Residential Drug Abuse Treatment Program regulations in 28 CFR part 550 has been evaluated, etc.); and

• The inmate has been determined to be at a minimum or low risk of recidivating based on his or her last two assessments, or has had a petition to be transferred to prerelease custody approved by the warden.

Similar requirements exist under the FSA for application of earned Time Credits to transfer to supervised release. Time Credits may not be applied to transfer to supervised release under 18 U.S.C. 3624(g) unless:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

- The inmate's sentence includes a period of supervised release to be served after his or her term of imprisonment;

- The inmate's latest risk and needs assessment shows that he or she is at a minimum or low risk of recidivating; and

- The application of Time Credits would not result in starting the period of supervised release more than 12 months before he or she would otherwise be eligible to do so (i.e., any amount of earned Time Credits in excess of 12 months would be applied to prerelease custody).

See Nathan James, U.S. Congressional Research Service, The First Step Act of 2018: An Overview (2019), at 5-6.

The Bureau assures commenters that FSA Time Credits will be applied to early transfer to supervised release, as authorized by the FSA in 18 U.S.C. 3632(d)(4)(C) and 18 U.S.C. 3624(g). See 2020 Annual Report at 39-44. The Bureau intends to adhere to the parameters of the FSA to permit application of Time Credits toward transfer to supervised release pending development of policy, in individual cases as appropriate.


COMMENT:  Earning FSA Time Credits should continue in Residential Reentry Centers and/or while in home confinement.

Many commenters raised an issue that was articulated by Senator Sheldon Whitehouse (D-RI) and Senator John Cornyn (R-TX) as follows:

The proposed rule also provides that "FSA Time Credits can only be earned while an inmate is in a Bureau facility, and will not be earned if an inmate is in a Residential Reentry Center or on home confinement." The proposed rule does not cite any

authority for this restriction, and this interpretation is not consistent with the goals of the

First Step Act.

Allowing individuals to earn time credits while in RRCs is authorized by the First Step

Act. The Act provides that "[t]ime credits earned . . . by prisoners who successfully

participate in recidivism reduction programs or productive activities shall be applied

toward time in prerelease custody or supervised release." It defines "prisoner" as "a

person who has been sentenced to a term of imprisonment pursuant to a conviction for a

Federal criminal offense, or a person in the custody of the Bureau of Prisons."

Because "[p]re-release inmates at an RRC remain in Federal custody while serving a

sentence imposed by a U.S. District Court or DC Superior Court," they are "prisoners"

for the purposes of the First Step Act. Nor does the First Step Act distinguish between

"prisoners" who are serving their sentence in a BOP institution, in an RRC, or on home

confinement in describing the time credit program. By its own terms, the statute allows

BOP to award time credits to individuals incarcerated in an RRC toward time in

supervised release.

Allowing individuals incarcerated in an RRC to earn time credits by participating in

EBRRs would further the purposes of the First Step Act. RRCs offer substance abuse

treatment and other programs similar to those offered in BOP institutions. There is no

reason to believe that a program offered in an RRC will reduce recidivism any less than

one offered to an individual in prison. In fact, such programs may be more effective, as

individuals are close to release from custody and can begin putting lessons learned into

practice as they transition home. BOP should revise the proposed rule to allow

individuals to earn time credits while in an RRC.

Congressman Hakeem Jeffries (D-NY) also stated, "I see no reason to make individuals in Residential Reentry Centers (RRCs) or in home confinement ineligible to earn time credits. . . . Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so."

RESPONSE: After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody—whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), toward transfer to supervised release.

The practical effect of allowing eligible inmates to keep earning Time Credits while in prelease custody (RRCs) will likely be limited, however, for several reasons. First, the Bureau intends to transfer eligible inmates who satisfy the criteria in 3624(g) to supervised release to the extent practicable, rather than to prelease custody. The Bureau therefore anticipates that the total population of eligible inmates in RRCs or home confinement will be small.

Second, as a practical matter, programming and services for inmates in RRCs or home confinement will often be provided off-site or by a third-party provider, which makes tracking successful participation more difficult. For example, community-based substance use treatment programs referred to by the Senators in their comments are not provided on-site at RRCs, but rather on an outpatient basis. The Bureau uses a comprehensive inmate information tracking system that is only accessible to Bureau staff. The Bureau's inmate information tracking system is not accessible to RRC staff, and therefore cannot track inmate programming activity when inmates are no longer in the custody of the Bureau of Prisons.

Third, unlike a prison facility, which is a self-contained unit under the Bureau's control and supervision that can provide Bureau-authorized, comparable, and approved programming to all housed

inmates, the breadth of programming available at or through different RRCs, or in the communities
where an inmate may be place in home confinement, could vary significantly and may not correspond
directly to recommendations based on inmates' most recent risk and needs assessments.

Given these variables, the Bureau will work on a case-by-case basis with eligible inmates in
RRCs to identify appropriate available programming for them to earn FSA Time Credits, and will
determine how to best track participation as part of the Bureau's commitment to ensure the maximum
number of FSA Time Credits may be awarded to the maximum number of eligible inmates. The Bureau
will issue guidance on this topic to ensure consistency in implementation.


**COMMENT:  All inmates should be eligible for FSA Time Credits without exclusions.**

Several commenters recommended that, as a general matter, any inmate willing to participate in
the FSA Time Credit program should be eligible for FSA Time Credits.  A few individual commenters
suggested more specifically that inmates convicted of particular offenses (as described above) should be
removed from the category of "ineligible prisoners," as described in 18 U.S.C. 3632(d)(4)(D), and
should be permitted to earn FSA Time Credits for application toward prerelease custody or transfer to
supervised release.

RESPONSE:  As noted, 18 U.S.C. 3632(d)(4)(D) describes inmates that are "ineligible to receive
time credits" under Subchapter D (the Risk and Needs Assessment System) if serving a term of
imprisonment for conviction under any of the provisions listed therein.  It is outside the Bureau's
authority to alter the exclusions as stated in the FSA.  Some commenters suggested that "non-violent"
offenses be removed from the ineligibility exclusions, but did not specify which offenses listed might be
considered "non-violent" or otherwise define that term.  Regardless, the statutory exclusions may only
be amended by Congress.

Specific offenses:  The FSA enumerates 68 offenses for which inmates who are serving terms of imprisonment are ineligible.  Commenters raised several specific offenses. We note that under the FSA's list of 68 enumerated offenses, the following are included as ones for which inmates are ineligible if they are serving a term of imprisonment upon conviction:

- 18 U.S.C. 2250, relating to failure to register as a sex offender (see 18 U.S.C. 3632(d)(4)(D)(xxxviii));

- 18 U.S.C. 2251, relating to the sexual exploitation of children (see 18 U.S.C. 3632(d)(4)(D)(xxxix);

- 18 U.S.C. 2251A, relating to the selling or buying of children (see 18 U.S.C. 3632(d)(4)(D)(xl));

- 18 U.S.C. 2252, relating to certain activities concerning material involving the sexual exploitation of minors (see 18 U.S.C. 3632(d)(4)(D)(xli));

- 18 U.S.C. 2252A, relating to certain activities involving material constituting or containing child pornography (see 18 U.S.C. 3632(d)(4)(D)(xlii));

- 18 U.S.C. 2260, relating to the production of sexually explicit depictions of a minor for importation into the United States (see 18 U.S.C. 3634(d)(4)(D)(xliii)).

Prior convictions:  As stated in the preamble to the proposed rule, an inmate cannot earn FSA Time Credits if he or she has a disqualifying prior conviction as specified in 18 U.S.C. 3632(d)(4)(D). In the interest of clarifying the statement in the proposed rule, a "disqualifying prior conviction" would render an inmate ineligible to earn Time Credits under 18 U.S.C. 3632(d)(4)(D)(li) if the inmate:

1.    Had a **prior conviction** for which he or she served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

- murder (as described in 18 U.S.C. § 1111),

- voluntary manslaughter (as described in 18 U.S.C. § 1112),

- assault with intent to commit murder (as described in 18 U.S.C. § 113(a));

- aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. §§ 2241 and 2242),

- abusive sexual contact (as described in 18 U.S.C. §§ 2244(a)(1) and (a)(2)),

- kidnapping (as described in 18 U.S.C. chapter 55),

- carjacking (as described in 18 U.S.C. § 2119),

- arson (as described in 18 U.S.C. §§ 844(f)(3), (h), or (i)), or

- terrorism (as described in 18 U.S.C. chapter 113B);

*AND*

2.     Is currently serving a term of imprisonment of more than 1 year for an offense described in 18 U.S.C. 3559(c)(2)(F), i.e., a "serious violent felony," which means either --

(i)  a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

- murder (as described in 18 U.S.C. § 1111);

- manslaughter other than involuntary manslaughter (as described in 18 U.S.C. § 1112);

- assault with intent to commit murder (as described in 18 U.S.C. § 113(a));

- assault with intent to commit rape (as described in 18 U.S.C. 3559(c)(2)(A));

- aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. §§ 2241 and 2242);

- abusive sexual contact (as described in 18 U.S.C. §§ 2244(a)(1) and (a)(2));

- kidnapping (as described in 18 U.S.C. 3559(c)(2)(E));

- aircraft piracy (as described in 49 U.S.C. § 46502);

- robbery (as described in 18 U.S.C. §§ 2111, 2113, or 2118);

- carjacking (as described in 18 U.S.C. § 2119);

- extortion (as described in 18 U.S.C. 3559(c)(2)(C));

- arson (as described in 18 U.S.C. 3559(c)(2)(B));

- firearms use (as described in 18 U.S.C. 3559(c)(2)(D));

- firearms possession (as described in 18 U.S.C. § 924(c));

- or attempt, conspiracy, or solicitation to commit any of the above offenses;

*OR*

 (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more --

- that has as an element the use, attempted use, or threatened use of physical force against the person of another or

- that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.


The Bureau is cognizant of the strict categorical analysis required by the Supreme Court in adjudicating whether an offense meets the elements or residual clause of 18 USC 3559. As such, the Bureau after consultation with the Department of Justice will ensure that its facilities receive updated information as to which federal and state offenses qualify or are the subject of litigation and that inmate records are updated to ensure maximum participation in credit-earning EBRRs.

Deportable inmates: As the FSA also indicates in 18 U.S.C. 3632(d)(4)(E), an inmate who is subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) may not have FSA Time Credits applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).

Although the Bureau does not have the authority to award FSA Time Credits to inmates who are ineligible under the FSA, such inmates may still earn other benefits for successfully participating in the many other types of programming offered by the Bureau. Inmates ineligible for earning or applying

FSA Time Credits may still receive incentives such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs.

## COMMENT:  Forfeiture penalties for earned Time Credits are too severe.

Many commenters stated that the proposal to amend the Bureau's regulations on inmate discipline in 28 CFR part 541 to include forfeiture of FSA Time Credits as a disciplinary sanction was too severe.  One commenter stated that:

> The forfeiture rates would be too harsh on their own, but even more punitive when
> combined with other negative consequences for violations, including limits on future
> earning and use of time credits and would be disproportionately severe across all levels of
> prohibited acts...  Moreover, forfeiture of earned time credits is not the only consequence
> an individual would suffer as the result of a prison infraction.  An infraction could also
> negatively affect an individual's ability to earn and use time credits in the future by
> raising his risk score...

> Another commenter stated that

> The proposed rule provides that to restore credits from prison rule violations, an
> individual must first have "[c]lear conduct for at least four consecutive risk and needs
> assessments."...  It could take at least 4 years to complete "at least four consecutive risk
> and needs assessments."  Yet BOP provides no justification for requiring clear conduct
> for this long.  Indeed, requiring an individual to remain infraction-free for at least 4 years
> is inconsistent with PATTERN.  Under PATTERN, individuals who are infraction-free
> for 12 months or more receive no points related to the recency of an infraction.  If

PATTERN indicates those with infractions older than 12 months are no more risky than

those with infractions older than 4 years, it is difficult to understand what justification

BOP would have to require "clear conduct" for what could be at least 4 years.

RESPONSE: The Bureau agrees with these commenters, and has adjusted the proposed

penalties related to FSA Time Credits accordingly. As stated in the proposed rule, FSA Time Credits

may be lost through inmate discipline procedures described in 28 CFR part 541 only if an inmate

violates the requirements or rules of an EBRR Program or PA. The FSA authorizes the Bureau to

develop procedures for the reduction of FSA Time Credits for inmates under these circumstances. See

18 U.S.C. 3632(e). Opting out of a program will not result in the forfeiture of credits, unless failure to

complete the program itself constitutes an infraction (e.g. failing to accept a mandatory work

assignment).

The Bureau's proposed amendments to 28 CFR 541.3, Table 1 (Prohibited Acts and Available

Sanctions), were intended to resemble the structure of current sanctions for loss of Good Conduct Time,

which allow for forfeiture in escalating amounts depending on the severity level of the prohibited act

committed. However, in light of the comments received, the Bureau alters the proposed forfeiture

sanctions to more closely mirror the Good Conduct Time forfeiture sanctions, and accordingly decreases

the amount of FSA Time Credits forfeiture sanctions for each prohibited act severity level offense by

more than half.

Further, upon review, the Bureau agrees with commenters that it is inconsistent with the risk and

needs assessment methodology to require clear conduct (behavior clear of inmate disciplinary

infractions under 28 CFR part 541) for four consecutive assessments to permit restoration of forfeited

Time Credits, and therefore alters the regulation to maintain consistency with the Department of Justice

risk and needs assessment methodology – requiring that a number of successive assessments (one

year) as a condition of restoring forfeited Time Credits.


## COMMENT:  The FSA should be applicable to D.C. Code Offenders.

The Bureau reopened the comment period of the proposed rulemaking from October 18, 2021,

until November 17, 2021, to solicit public comment on the limited issue of whether D.C. Code offenders

in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4), as added by

the FSA.  (86 FR 57612).  We received thirty submissions during the reopened comment period.

However, of those submissions, only eighteen were comments relating to the limited issue.   Twelve

submissions related to issues raised during the proposed rule comment period in 2020 or to specific

circumstances of particular inmates in Bureau facilities and their eligibility for FSA Time Credits, rather

than the limited issue for which the Notice reopened the comment period.  As we stated above with

regard to submissions unrelated to the proposed rule, we encourage those with questions regarding

particular inmates to address those questions to staff at facilities where those inmates are housed, or to

the regional offices with oversight for those facilities.


## RESPONSE:

The October 18, 2021 Notice indicated that the proposed rule would have expressly excluded

from time-credit eligibility any inmate serving a term of imprisonment only for an offense under the

laws of the District of Columbia.  The FSA, however, is ambiguous as to whether those with convictions

under the D.C. Code are eligible to apply FSA Time Credits through their participation in EBRR

programs or PAs.

Some comments pointed to features of the statute's text or history, suggesting that Congress intended D.C. Code offenders to be eligible to apply FSA Time Credits to their sentences. A comment from the Public Defender Service for the District of Columbia noted that the FSA defines "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons." 18 U.S.C. 3635(4). That definition includes D.C. Code offenders, who the commenter pointed out are in Bureau custody under the National Capital Revitalization and Self Government Improvement Act of 1997, which requires that "any person who has been convicted of a felony offense pursuant to the District of Columbia Code … shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." 111 Stat. 251 at 734; Pub. L. 105–33, Sec. 11021 (the "D.C. Revitalization Act").

A comment from Senator Cory Booker (D-NJ) noted that other unenacted bills addressing similar subjects that preceded the enactment of the FSA would have defined "prisoner" as a person sentenced for a federal offense. See Corrections and Recidivism Reduction Act of 2016, H.R. 759, 114th Cong. 8(4) (as introduced Feb. 5, 2015 sub nom. Recidivism Risk Reduction Act), https://www.congress.gov/bill/114th-congress/house-bill/759/text/ih (defining "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense"); the Sentencing Reform and Corrections Act of 2015, S. 2123, 114th Cong. 202(b)(8) (as introduced Oct. 1, 2015), https://www.congress.gov/bill/114th-congress/senate-bill/2123/text/is (defining "eligible prisoner" as "a prisoner serving a sentence of incarceration for conviction of a Federal offense," with exceptions for medical and security circumstances and sentences under one month).

But there are other statutory features suggesting Congress may not have intended the FSA Time

Credit program to alter the time that D.C. Code offenders spend in Bureau facilities while serving

sentences imposed by the District of Columbia. As noted, the D.C. Revitalization Act commits D.C.

Code offenders to Bureau custody, but provides that these offenders "shall be subject to any law or

regulation applicable to" U.S. Code offenders only insofar as those laws or regulations are "consistent

with the sentence imposed." (D.C. Code section 24-101(b).) While this restriction does not appear to

bar D.C. Code offenders from earning FSA Time Credits, it does appear to bar them from applying those

credits in a way that would change the duration of their D.C.-imposed sentences, i.e., by granting them

early supervised release. Even given this limitation that currently exists by virtue of the D.C. Code, it is

possible that Congress intended to permit D.C. Code offenders to use Time Credits to secure an early

transfer to prerelease custody, which does not change the sentence's duration. But the fact that at least

part of the FSA Time Credit program is inconsistent with the terms on which the D.C. Code has

committed D.C. Code felons to Bureau custody suggests otherwise.

In addition, Congress took care to preclude violent U.S. Code offenders from using FSA Time

Credits to secure an early release from Bureau facilities, specifying a long list of serious federal crimes

in 18 U.S.C. 3632(d)(4)(D), a conviction for which makes a prisoner ineligible to earn Time Credits.[5]

Congress's failure to provide an analogous list of serious D.C. Code offenses could indicate that

Congress did not intend D.C. Code offenders to be eligible to apply Time Credits. Similarly, the FSA

states that the Time Credit system does not apply "with respect to offenses committed before November

1, 1987," (see Section 102(b)(3) of the FSA), which is the date federal parole was abolished, but does

not contain any like provision for the date D.C. parole was abolished (2000). If the FSA is construed to

---

[5] See, e.g., 164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Sen. Cornyn) ("There are some who, for example, say that this legislation will put violent criminals and sex offenders back on the streets, which is completely false. . . . This bill will not allow dangerous, violent criminals to be released early. . . . We have disqualified violent offenders . . . .").

afford D.C. Code offenders in Bureau custody a right to apply Time Credits, Congress's failure to account for the date on which D.C. parole was abolished would mean that some D.C. Code offenders could be eligible for both parole and the FSA Time Credit program.  Congress could have acted to avoid the overlap of these two programs, and the fact that Congress did not do so could further suggest that Congress did not intend the FSA to make D.C. Code offenders eligible to apply Time Credits.

Finally, there is a textual basis for concluding that Congress did not intend the FSA to make D.C. Code offenders eligible to use Time Credits.  In Section 105 of the FSA, Congress provided that nothing in the FSA "may be construed to provide authority to place a prisoner in prerelease custody or supervised release who is serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 States, or of a territory or possession of the United States." 18 U.S.C. 3621 Note.  As a comment (from the D.C. Justice Lab, Democracy Forward Foundation, FAMM, Justice Action Network, National Association of Criminal Defense Lawyers, Washington Lawyers' Committee for Civil Rights, and Urban Affairs) noted, it is unclear whether the District of Columbia is "one of the 50 States," a "territory," or a "possession" of the United States.  The Bureau agrees that Section 105 is ambiguous; statutory references to States and territories may or may not be understood to include the District of Columbia, depending on the statutory context.  See, e.g., District of Columbia v. Carter, 409 U.S. 418, 420 (1973).  Particularly in light of the statutory features above, Section 105 could be read to manifest Congress's desire to avoid interference with non-U.S. Code sentences of offenders who end up in Bureau custody.

Overall, there is significant ambiguity about whether and to what extent D.C. Code offenders are eligible to apply FSA Time Credits under the statute.  A construction of the FSA that would allow D.C. Code offenders to apply Time Credits under federal law would create particular concerns because of the absence of any basis on which to preclude D.C. Code offenders convicted of violent crimes from then

using Time Credits. That result would substantially diverge from the FSA provision that expressly bars

federal inmates convicted of any one of a list of 68 categories of enumerated violent offenses (only one

of which includes any D.C. Code offenses, and only under certain conditions, see 18 U.S.C.

3632(d)(4)(D)(li)) from receiving FSA Time Credits. Although the majority of the comments received

during the reopened comment period supported allowing D.C. Code offenders to earn FSA Time

Credits, they largely failed to address the issue of whether violent D.C. Code offenders should be

eligible to apply such credits along with non-violent offenders. A single comment received during the

reopened comment period opposed application of the FSA to D.C. Code offenders in Bureau custody,

expressing concern that the rule would "undermine the criminal justice system and allow these violent

offenders to re-enter society to only most likely commit these violent crimes again." The lack of

additional discussion in the comments regarding this issue is particularly problematic because the

overwhelming majority of D.C. offenders in Bureau custody are serving sentences for violent offenses

analogous to the list of offenses that disqualify federal offenders from receiving FSA Time Credits.

The Bureau is also concerned that adopting a reading of the FSA to permit D.C. Code offenders

to leave Bureau facilities before they have served their D.C.-imposed sentences stands in some tension

with other provisions of the D.C. Code. In other circumstances, where the length of a D.C. Code

offender's sentence would be reduced, there are specific authorities in the D.C. Code to authorize such

actions. For example, the D.C. Code specifies that offenders sentenced to imprisonment for felonies

committed after August 5, 2000, "may receive good time credit toward service of the sentence only as

provided in 18 U.S.C. 3624(b)" (D.C. Code section 24-403.01(d)); that those sentenced to imprisonment

after August 5, 2000, "for a nonviolent offense may receive up to a one-year reduction" for completing a

substance-abuse-treatment program in accordance with 18 U.S.C. 3621(e)(2) (D.C. Code section 24-

403.01(d-1)(1)); and that certain D.C. Code offenders who committed their crimes before age 25 have an

opportunity to be resentenced to a reduced term  (D.C. Code section 24–403.03).  There are no similar provisions to allow D.C. Code offenders to have sentences reduced by early placement on supervised release under the terms of the FSA.

Many of these considerations implicate the sovereignty of the District of Columbia and its authority over D.C. Code offenders and could be addressed through local legislation. The Bureau further understands that the D.C. Council is actively considering whether and under what circumstances D.C. Code offenders should be eligible for FSA Time Credits as a matter of D.C. law.  The Council has the authority and latitude to incorporate the FSA Time Credit program by reference into the D.C. Code and specify which D.C. Code offenders are eligible to apply FSA Time Credits.  The D.C. Council may, for example, develop a list of excluded D.C. Code offenses that parallels the list of violent federal offenses in 18 U.S.C. 3632(d)(4)(D), or otherwise clarify whether and in what circumstances inmates may apply Time Credits toward pre-release custody and/or supervised release.  Should the Council enact legislation that speaks to the issues presented by the FSA's ambiguity, such legislation could significantly inform, or dictate, the relevance of the FSA's time-credit program to D.C. Code offenders in the Bureau's custody.

In light of these statutory interpretation and policy considerations, and the current deliberations of the D.C. Council, the Bureau will defer definitively resolving the FSA's ambiguities with respect to D.C. Code offenders in its custody.  The final rule therefore is amended to reflect the possibility that the D.C. Council will enact legislation regarding the eligibility of such offenders to apply FSA Time Credits.  Thus, any inmate in Bureau custody who is sentenced to a term of imprisonment under the Criminal Code of the District of Columbia is, at present, not eligible to apply FSA Time Credits unless the laws of the District of Columbia are amended to authorize the application of such credits.  The

~~Bureau may revisit this question through future rulemaking, depending on the outcome of the U.S.~~
Council's consideration of these issues, and any other relevant developments.

## REGULATORY CERTIFICATIONS

**Executive Orders 12866, and 13563:**  Because this proposed rule may raise novel legal or
policy issues arising out of implementation of the First Step Act, the Office of Management and Budget
(OMB) has determined that it constitutes a "significant regulatory action" under section 3(f) of
Executive Order 12866 and has reviewed it.

The economic impact of this rule is limited to a specific subset of inmates who are eligible to
earn and apply FSA Time Credits toward additional prerelease custody or early transfer to supervised
release.  Under the FSA, FSA Time Credits may be earned by an eligible inmate who is assessed to have
a minimum or low risk for recidivating and who has had no increased risk of recidivism over the most
recent two consecutive assessments conducted by the Bureau.  Consistent with the FSA, inmates in
Bureau custody are assessed under its risk and needs assessment system, which includes both static and
dynamic elements.

For example, on August 27, 2020, 131,386 inmates had been assessed under the risk and needs
assessment tool and received a risk and needs assessment score.  The risk and needs assessment scores
for the entire group of 131,386 inmates were: 50,060 classified as high; 25,043 classified as medium;
38,084 classified as low; and 18,199 classified as minimum.  Of these inmates, approximately 65,000
would be ineligible to earn FSA Time Credits under the FSA due to the inmate's crime of conviction.
This data represents a snapshot of those inmates in Bureau custody as of August 27, 2020.

The Bureau conducted risk and needs assessments for federal inmates and assigned EBRR
Programs by the January 15, 2020, FSA deadline.  As of that date, recidivism risk assessment levels of

High, Medium, Low, or Minimum were assigned to all sentenced inmates at Bureau designated facilities. The Bureau anticipates that this data will change continually, as inmates in custody earn reductions in risk classification, based on program participation and other dynamic factors, and inmates enter and release from Bureau custody.

The Bureau anticipates that as a result of this rule and the FSA, additional inmates will engage in programming to earn FSA Time Credits. As discussed above, FSA Time Credits may be earned for successful completion of an EBRR Program or PA that is assigned to an inmate based on the inmate's needs assessment. The current list of these programs can be found at: https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf. These programs are available to all inmates regardless of an inmate's eligibility to earn FSA Time Credits.

The rule may also result in movement of eligible inmates who earn FSA Time Credits from Bureau facilities to prerelease custody in the community (including RRCs and home confinement) earlier in the course of their confinement and for a longer period of time than would have previously occurred. In some cases, this transfer of time from secured confinement to prerelease custody may result in increased costs, depending on the relative costs of the inmate's current facility and the costs associated with housing or supervision in prerelease custody.

The rule may also result in the early transfer of inmates from custody to supervised release, functionally shortening their term of imprisonment. In such cases, the Bureau would avoid costs that would otherwise have been incurred to confine the affected inmates for that amount of time.

At present, therefore, specific monetary costs or savings for these future actions cannot be calculated. But, consistent with the purpose of the statute, the proposed rule will enhance public safety and reduce the need for future incarceration by providing significant incentives to encourage inmates to

participate in evidence-based programs intended to reduce their risk of recidivism and help facilitate

their successful reentry back into society after they have served their time.[6]

For these reasons, it is not possible to forecast the actual economic effect of this rule. However, given the mix of cost increases and savings which may result, the overall long-term economic impact is expected to be marginal in either direction.

The purpose of this rule is to codify the Bureau's procedures regarding the earning and application of time credits as authorized by the FSA. Time credits may be applied towards prerelease custody or early transfer to supervised release, and some inmates will be eligible for such custody or release as soon as this rule goes into effect. Delaying implementation for 30 days could therefore deprive at least some inmates of time in the less restrictive environments that Congress has determined are appropriate for eligible inmates. Given the liberty issues implicated by the prompt implementation of this program and this rule, the Bureau is prepared to begin implementation immediately, and the Bureau therefore finds good cause for exempting this rule from the provision of the Administrative Procedure Act (5 U.S.C. 553(d)) which ordinarily requires a delay in effective date. The Bureau notes that neither it nor the affected inmates require a delay to adjust their practices before this rule takes effect. A delay in the effective date of this final rule would be unnecessary and contrary to the public interest.

**Executive Order 13132:** This rule will not have substantial direct effect on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, under Executive Order 13132, we determine that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

---

[6] The costs or cost savings resulting from this rule will not be fully realized for years to come, as increasing numbers of inmates have opportunities to earn FSA Time Credits over their terms of incarceration, are transferred to prerelease custody or supervised release, and reintegrate into the community.

**Regulatory Flexibility Act:**  The Director of the Bureau of Prisons, under the Regulatory

Flexibility Act (5 U.S.C. 605(b)), reviewed this rule and certifies that it will not have a significant

economic impact upon a substantial number of small entities for the following reasons:  This rule

pertains to the correctional management of offenders committed to the custody of the Attorney General

or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated

funds.

**Unfunded Mandates Reform Act of 1995:**  This rule will not result in the expenditure by State,

local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any

one year, and it will not significantly or uniquely affect small governments.  Therefore, no actions were

deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

**Congressional Review Act:**  This rule is not a major rule as defined by the Congressional

Review Act, 5 U.S.C. 804.

For the foregoing reasons, we issue the regulations regarding the First Step Act Time Credits,

proposed on November 25, 2020, with modifications, as set forth below.

List of Subjects in 28 CFR Part 523

Prisoners.

_____

Michael D. Carvajal
Director, Federal Bureau of Prisons

Under rulemaking authority vested in the Attorney General in 5 U.S.C. 301; 28 U.S.C. 509, 510

and delegated to the Director, Bureau of Prisons in 28 CFR 0.96, we amend 28 CFR part 523 as follows:

**SUBCHAPTER B -- INMATE ADMISSION, CLASSIFICATION, AND TRANSFER**

**PART 523 -- COMPUTATION OF SENTENCE**

1. The authority citation for 28 CFR part 523 is revised to read as follows:

**Authority**: 5 U.S.C. 301; 18 U.S.C. 3568 (repealed November 1, 1987, as to offenses committed on or after that date), 3621, 3622, 3624, 3632, 3635, 4001, 4042, 4081, 4082 (repealed in part as to conduct occurring on or after November 1, 1987), 4161-4166 (repealed October 12, 1984, as to offenses committed on or after November 1, 1987), 5006-5024 (repealed October 12, 1984, as to conduct occurring after that date), 5039; 28 U.S.C. 509, 510.

2. Add a new Subpart E to part 523, entitled **"First Step Act Time Credits"** as follows:

**SUBPART E -- FIRST STEP ACT TIME CREDITS**

**Sec.**

**523.40  Purpose.**

**523.41  Definitions.**

**523.42  Earning First Step Act Time Credits.**

**523.43  Loss of FSA Time Credits.**

**523.44  Application of FSA Time Credits.**

**§ 523.40  Purpose.**

(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (P.L. 115-391, December 21, 2018, 132 Stat 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time

Credits."

(b) Generally, as defined and described in this subpart, an eligible inmate who successfully

participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs)

that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to

be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).

## § 523.41  Definitions.

(a) **Evidence-Based Recidivism Reduction (EBRR) Program.**  An EBRR Program is a group

or individual activity that has been shown by empirical evidence to reduce recidivism or is based on

research indicating that it is likely to be effective in reducing recidivism; and is designed to help

prisoners succeed in their communities upon release from prison.  EBRR Programs may include, but are

not limited to, those involving the following types of activities:

(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other

life skills;

(2) Family relationship building, structured parent-child interaction, and parenting skills;

(3) Classes on morals or ethics;

(4) Academic classes;

(5) Cognitive behavioral treatment;

(6) Mentoring;

(7) Substance abuse treatment;

(8) Vocational training;

(9) Faith-based classes or services;

(10) Civic engagement and reintegrative community services;

(11) ~~Inmate work and employment opportunities;~~

(12) Victim Impact Classes or other Restorative justice programs; and

(13) Trauma counseling and trauma-informed support programs.


(b) **Productive Activity (PA).**  A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.

(c) **Successful participation**.

(1) An eligible inmate must be "successfully participating" in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

(4) An eligible inmate, as described in paragraph (d) below, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

(i)  Placement in a Special Housing Unit;

(ii) Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii) Temporary transfer to the custody of another federal or non-federal government agency (e.g., on state or federal writ, transfer to state custody for service of sentence, etc.);

(iv) Placement in mental health/psychiatric holds; or

(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

(5) Opting out.

(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.

(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation (see 28 CFR part 523).

(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

(d) **Eligible inmate.**

(1) Eligible to earn FSA Time Credits. An inmate who is *eligible to earn* FSA Time Credits is an "eligible inmate" for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) below.

(2) Exception. If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

**§ 523.42  Earning First Step Act Time Credits.**

(a) <u>When an eligible inmate begins earning FSA Time Credits.</u>  An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

(b) <u>Dates of participation in EBRRs or PAs.</u>

(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.

(2) An eligible inmate, as defined in these regulations, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.

(3) An eligible inmate, as defined in these regulations, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.

(c) <u>Amount of FSA Time Credits that may be earned.</u>

(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

(2) <u>Extra FSA Time Credits for Low/Minimum Recidivism Risk Inmates.</u>  For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and

(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

### § 523.43  Loss of FSA Time Credits.

(a) Procedure for loss of FSA Time Credits.  An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA.  The procedures for loss of FSA Time Credits are described in 28 CFR part 541.

(b) How to Appeal loss of FSA Time Credits.  Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).

(c) Restoration of FSA Time Credits.  An inmate who has lost FSA Time Credits under this regulation may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.

### § 523.44  Application of FSA Time Credits.

(a) How Time Credits may be applied.  For any inmate eligible to earn FSA Time Credits under these regulations who is:

(1) *Sentenced to a term of imprisonment under the U.S. Code*, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.

(2) *Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (see 18 U.S.C. 3632(d)(4)(E))*, the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.

(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than *the U.S. Code (see Section 105 of the FSA, PUB. L. 115–391, 132 STAT. 5214 (not codified; included as note to 18 U.S.C. 3621))*, the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.  This provision will not bar the application of FSA Time Credits, as authorized by the D.C. Code, for those serving a term of imprisonment for an offense under the D.C. Code.

(b) <u>Consideration for application of FSA Time Credits.</u>  Where otherwise permitted by these regulations, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:

(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and

(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

(c) <u>Prerelease custody.</u>  The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the above criteria in paragraph (b):

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

(i)  The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(ii)  The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(iii)  The prisoner is unlikely to recidivate

(d) <u>Transfer to supervised release.</u>  The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the above criteria in paragraphs (b) and (c):

(1)  An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

(2)  An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3)  The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.


**SUBCHAPTER C — INSTITUTIONAL MANAGEMENT**

**PART 541 — INMATE DISCIPLINE AND SPECIAL HOUSING UNITS**

3.  The authority citation for part 541 continues to read as follows:

Authority: 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (repealed in part as to offenses committed on or after November 1, 1987), 4161-4166 (repealed as to offenses committed on or after November 1, 1987), 5006-5024 (repealed October 12, 1984, as to offenses committed after that date), 5039; 28 U.S.C. 509, 510.


4.  Amend 541.3, Table 1 – Prohibited Acts and Available Sanctions, to read as follows:

**§ 541.3  Prohibited acts and available sanctions**

\* \* \* \* \*

**Table 1 – Prohibited Acts and Available Sanctions**

| | | |
|---|---|---|
| | \* \* \* \* \* \* \* | |
| **AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS** | | |
| | \* \* \* \* \* \* \* | |
| | B.2 | Forfeit up to 41 days of earned FSA Time Credits for each prohibited act committed. |
| \* \* \* \* \* \* \* | | |
| **AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS** | | |
| \* \* \* \* \* \* \* | | |
| | B.2 | Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed. |
| \* \* \* \* \* \* \* | | |
| **AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS** | | |
| \* \* \* \* \* \* \* | | |
| | B.2 | Forfeit up to 14 days of earned FSA Time Credits for each prohibited act committed. |
| \* \* \* \* \* \* \* | | |
| **AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS** | | |
| \* \* \* \* \* \* \* | | |
| | B.2 | Forfeit up to 7 days of earned FSA Time Credits (only where the inmate is found to have committed a second violation of the same prohibited act within 6 months; forfeit up to 14 days of FSA Time Credits (only where the inmate is found to have committed a third violation of the same prohibited act within 6 months).. |
| \* \* \* \* \* \* \* | | |

\* \* \* \* \*

5. Amend 541.7, Unit Discipline Committee (UDC) review of the incident report, paragraph (f), as follows:

**§ 541.7  Unit Discipline Committee (UDC) review of the incident report.**

\* \* \*

(f)  Sanctions.  If you committed a prohibited act or prohibited acts, the UDC can impose any of the available sanctions in Tables 1 and 2, except loss of good conduct time credit, FSA Time Credits, disciplinary segregation, or monetary fines.